# STATE OF MICHIGAN

# COURT OF APPEALS

DONALD NOLEN,

  Plaintiff-Appellant,

v

MARK PATRICK HASTINGS and ELIZABETH
ANN HASTINGS,

  Defendants-Appellees.

UNPUBLISHED
October 18, 2016

No.  327785
Oakland Circuit Court
LC No.  2014-142344-NI

Before:  SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

In this negligence action for damages resulting from an automobile accident, plaintiff appeals the trial court order that granted defendants' motion for summary disposition. For the reasons provided below, we reverse.

Plaintiff sued defendants to recover damages in relation to an automobile accident. Plaintiff sued defendant Mark Patrick Hastings, who was under the influence of alcohol at the time of the accident, for negligence for rear-ending his vehicle that had been stopped at a red light. Plaintiff sought damages from defendant Elizabeth Ann Hastings under a theory of owner liability because she was the owner of the car that Mark was driving.

Defendants moved for summary disposition under MCR 2.116(C)(10) and argued that plaintiff had failed to establish that he had suffered a "serious impairment of body function" as contemplated by MCL 500.3135(1). Specifically, defendants contended that

> [t]he sole issue for purposes of this motion is the third prong [for establishing whether an injury rises to the level of a serious impairment of body function under Michigan's no-fault act, MCL 500.3101 *et seq.*]  That is, *whether Plaintiff has established that any of the alleged impairments have affected his general ability to lead his normal life*.  [Emphasis added.]

While noting that plaintiff did not pursue any "aggressive treatment" for his claimed injuries, defendants also argued that plaintiff's limitations of his regular life activities were essentially self-imposed and were not the result of doctor-imposed restrictions.

-1-

Plaintiff responded to the motion and argued that ever since the vehicle accident, he has not been the same. Plaintiff contended that his life had changed dramatically since the motor vehicle accident, specifically because of the pain he had in his neck, he could not participate in his recreational activities as much as he had before, which included reading, riding his motorcycle, golfing, and flying his plane. Further, plaintiff testified that the pain in his neck made it difficult to sleep, such that he now awoke several times a night.

When ruling from the bench, the trial court stated, in relevant part:

> The court, having reviewed the parties respective motion, response, briefs in support, attached documentary evidence, and the court record in this matter, as well as having considered the oral arguments presented by the parties to the court this morning, finds that while a factual dispute exists concerning the nature and extent of plaintiff's injuries, the dispute is not material to the determination of whether plaintiff has suffered a serious impairment of body function.

> Thus, whether plaintiff suffered a serious impairment of body function is a question of law for the court to decide.

> It is the opinion of this court that plaintiff has failed to establish that he sustained a serious impairment of body function. That is, an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life.

> The Court notes that while there may exist a medically identifiable or physiological basis for the pain, *self-imposed restrictions because of pain, in and of themselves fail* because there is no medical expertise supporting the restrictions which expertise would, in all likelihood, take into consideration the source of the pain before restrictions are imposed.

> Consequently, the court grants defendant's [sic] motion for summary disposition pursuant to MCR 2.116(C)(10) and dismisses the plaintiff's complaint in its entirety and the court will enter its order accordingly. [Emphasis added; citations omitted.]

Importantly, for the critical, emphasized portion of the opinion, the trial court relied solely on this Court's opinion in *McDanield v Hemker*, 268 Mich App 269; 707 NW23d 211 (2005). In *McDanield*, this Court applied footnote 17[1] from the Supreme Court's opinion

---

[1] In *Kreiner*, the Court provided a "nonexhaustive list of objective factors that may be of assistance in evaluating whether the plaintiff's 'general ability' to conduct the course of his normal life has been affected." *Kreiner*, 471 Mich at 133. One of the provided factors was factor (d), "the extent to any residual impairment." *Id.* Footnote 17 was attached to this factor and stated, "Self-imposed restrictions, as opposed to physician-imposed restrictions, based on real or perceived pain do not establish this point." *Id.* at 133 n 17.

*Kreiner v Fischer*, 471 Mich 109; 683 NW2d 611 (2004). *McDanield*, 268 Mich App at 282-284. But *Kreiner* was later overruled by *McCormick v Carrier*, 487 Mich 180; 795 NW2d 517 (2010). Thus, plaintiff's main thrust on appeal is that the trial court erred as a matter of law because, while *McDanield* had not been expressly overruled, the principle of law it relied upon has been rejected.

## I. STANDARDS OF REVIEW

As recently expressed by this Court:

> This Court reviews a trial court's decision on a motion for summary disposition de novo. When reviewing a motion for summary disposition under MCR 2.116(C)(10), this Court considers the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion to determine whether a genuine issue of material fact exists. The motion is properly granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. [*Laster v Henry Ford Health Sys*, ___ Mich App ___; ___ NW2d ___ (Docket No. 324739, issued August 23, 2016), slip op, p 4 (citations and quotation marks omitted).]

Further, the proper interpretation and application of the no-fault act is a question of law that we review de novo. *Southeast Mich Surgical Hosp v Allstate Ins Co*, ___ Mich App ___; ___ NW2d ___ (Docket No. 323425, issued August 9, 2016), slip op, p 2.

## II. ANALYSIS

Under Michigan's no-fault act, "insureds may recover directly from their insurers, without regard to fault, for qualifying economic losses arising from motor vehicle incidents." *McCormick*, 487 Mich at 189.

> In exchange for the payment of these no-fault economic loss benefits from one's own insurance company, the Legislature limited an injured person's ability to sue a negligent operator or owner of a motor vehicle for bodily injuries. In particular, the Legislature significantly limited the injured person's ability to sue a third party for noneconomic damages, e.g., pain and suffering. No tort suit against a third party for noneconomic damages is permitted unless the injured person "has suffered death, serious impairment of body function, or permanent serious disfigurement." [*Kreiner*, 471 Mich at 115, overruled on other grounds *McCormick*, 487 Mich 180, quoting MCL 500.3135(1).]

At issue in this case is whether plaintiff's suit is barred because he failed to meet the threshold of suffering a "serious impairment of body function," which the Legislature has defined as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). Thus, there are "three prongs that are necessary to establish a 'serious impairment of body function': (1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick*, 487 Mich at 195 (footnote omitted). At the

trial court, defendants moved for (and the trial court granted) summary disposition based on the assertion that plaintiff could not meet the third requirement of having the injury affect his general ability to lead his normal life. On appeal, defendants also argue that plaintiff has failed to meet the other two requirements as well. But because those issues were not the bases for defendants' motion for summary disposition at the trial court, we will limit our review to the "sole issue" they did raise: "whether Plaintiff has established that any of the alleged impairments have affected his general ability to lead his normal life."

In *McCormick*, the Court went to great lengths to express its disagreement with the *Kreiner* Court's interpretation of what constitutes a "serious impairment of body function." *Id.* at 203-209. As relevant to this appeal, the Court specifically rejected the *Kreiner* Court's adoption of a series of "extra-textual" factors[2] used to compare a person's lifestyle before the subject accident and after. *Id.* at 207-208. The *McCormick* Court held that "[b]ecause the factors adopted by the *Kreiner* majority are not based in the statutory text, and this Court's role is to apply the unambiguous statutory language, not improve it, we hold that the majority erred by adopting them." *Id.* at 208.

In relation to its factor (d) that addressed "the extent of any residual impairment," the *Kreiner* Court added footnote 17, which stated, "Self-imposed restrictions, as opposed to physician-imposed restrictions, based on real or perceived pain do not establish this point." *Kreiner*, 471 Mich at 133 n 17. It is the reliance on this language that resulted in the trial court's error in the present case.

As the *McCormick* Court made abundantly clear, the factors the *Kreiner* Court employed to evaluate whether an impairment has "affect[ed] the person's general ability to lead his or her normal life" are no longer of value and should not be relied on. Such an acknowledgment is important here because the trial court, when it granted defendants' motion for summary disposition, relied solely on this Court's decision in *McDanield*, which in turn relied on the *Kreiner* factors.

In *McDanield*, 268 Mich App at 270, this Court was asked to determine whether the plaintiff had incurred a serious impairment of body function as set forth in MCL 500.3135(1). In evaluating whether the plaintiff's general ability to lead her normal life was affected by the impairment, the *McDanield* Court turned to the *Kreiner* Court's decision, particularly citing in detail the factors that the *Kreiner* Court had implemented. *McDanield*, 268 Mich App at 274-275. After initially reviewing the first four factors that the *Kreiner* Court adopted and applying them to the facts in *McDanield*, the *McDanield* Court set forth the following analysis:

> We have intentionally left factor d, "the extent of any residual impairment," for last because it is directly tied to the footnote that appears to have

---

[2] "These factors are: '(a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment, and (e) the prognosis for eventual recovery.' " *McCormick*, 487 Mich at 208, quoting *Kreiner*, 471 Mich at 133.

been the sole basis for the trial court's resolution of this case, and which has created much confusion and contention in the bench and bar of this state. [*Kreiner*, 471 Mich] at 133 n 17. We, hopefully, will clarify the meaning of the footnote in a manner that is consistent with the intention of our Supreme Court in drafting the language contained therein.

Directly after reciting factor d, the *Kreiner* Court placed footnote 17, and the footnote provides, "Self-imposed restrictions, as opposed to physician-imposed restrictions, based on real or perceived pain do not establish this point." Read in the context of the placement of the footnote, the footnote can be construed as providing, "Self-imposed restrictions, as opposed to physician-imposed restrictions, based on real or perceived pain do not establish [the extent of any residual impairment]." The necessary corollary of this language is that physician-imposed restrictions, based on real or perceived pain, can establish the extent of a residual impairment.

First, we think it necessary to define what is being spoken about when the Court refers to "residual" impairment. The term "residual" means "pertaining to or constituting a remainder; remaining; leftover" or "something that remains to discomfort or disable a person following an illness, injury, operation, or the like[.]" *Random House Webster's College Dictionary* (2001). The impairment here can be best described as the inability of McDanield, in many situations, to position or maneuver her upper body, extremities, and neck and head in such a way that avoids pain from ligamentous injuries of the cervical spine, thereby interfering with or precluding various activities in McDanield's life. This claimed impairment is continuing or ongoing and remains to discomfort McDanield following the injury; therefore, it qualifies as a "residual" impairment. Consistent with the *Kreiner* footnote, *the extent of this residual impairment cannot be proven by way of self-imposed restrictions based on real or perceived pain. Stated differently, McDanield cannot establish the extent of her residual impairment by merely claiming that she has restricted herself from engaging in activities or making certain movements because she experiences pain.* We note that a self-imposed restriction not based on real or perceived pain can be considered. If a plaintiff restricts himself or herself from doing something because the plaintiff is physically incapable of doing so, but not on the basis of pain, the restriction should be subject to consideration in determining the extent of any residual impairment. For example, if a right-handed person's right arm is in a full cast, and that person claims to be restricted from playing sports that involve throwing a ball, the self-imposed restriction would suffice.

We think it evident that our Supreme Court crafted footnote 17 in *Kreiner*, in the context of establishing the extent of any residual impairment, because the nature of pain tends to be subjective and therefore inherently questionable. While there may exist a medically identifiable or physiological basis for the pain, *self-imposed restrictions because of pain, in and of themselves, fail because there is no medical expertise supporting the restrictions*, which expertise would, in all likelihood, take into consideration the source of the pain before restrictions are

imposed. That said, if there are physician-imposed restrictions based on real or perceived pain, footnote 17 does not require that the doctor offer a medically identifiable or physiological basis for imposing the restrictions. [*McDanield*, 268 Mich App at 282-284 (emphasis altered).]

However, as already discussed, the Michigan Supreme Court in *McCormick* expressly rejected the factors that the *Kreiner* Court adopted to evaluate whether an individual's impairment has affected that person's general ability to lead his or her normal life, which included the *Kreiner* Court's statement that "[s]elf-imposed restrictions, as opposed to physician-imposed restrictions" will not support a conclusion that a person's general ability to lead his or her normal life has been affected by any impairment. These factors and the limitation on self-imposed restrictions were reiterated by the Court in *McDanield*. Therefore, the trial court erred when it expressly cited to and relied on *McDanield* for this proposition when it granted defendants' motion for summary disposition.

As a result, we address whether there is a question of fact regarding if plaintiff's injuries affected his general ability to lead his normal life under the appropriate legal framework. The Michigan Supreme Court offered the following guidance for courts undertaking such an analysis:

[T]he plain text of the statute and these [dictionary] definitions demonstrate that the common understanding of to "affect the person's ability to lead his or her normal life" is to have an influence on some of the person's capacity to live in his or her normal manner of living. By modifying "normal life" with "his or her," the Legislature indicated that this requires a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis. Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident. [*McCormick*, 487 Mich at 202.]

The *McCormick* Court cautioned that a person's general ability to lead his or her normal life need not be destroyed, only *affected*. *Id.* Additionally, the plain language of MCL 500.3135(5) requires only that "some of the person's ability to live in his or her normal manner of living [have] been *affected*, not that some of the person's normal manner of living has itself been affected." *Id.* Accordingly, there is no "quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id.* at 203. Finally, the *McCormick* Court clearly stated that the statute does not provide for a temporal limitation regarding how long an impairment must endure before it can have an impact on a person's "general ability to live his or her normal life." *Id.* In so ruling, the *McCormick* Court noted that there is no requirement that an impairment of body function be permanent. *Id.*

Here, plaintiff testified that he was born on June 29, 1947, and that he resides in Clarkston, Michigan. Plaintiff is retired from General Motors but works seasonally for the Oakland County Sheriff's Department as a marine deputy. It is not disputed that plaintiff's injuries did not affect his ability to continue his part-time work. Plaintiff also reported no problems with his personal care needs, and his relationship with his significant other has not been impacted by his injuries. However, evidence was presented that showed that plaintiff's ability to partake in his normal recreational activities was curtailed.

Plaintiff is an owner of a motorcycle as well as a co-owner of a small plane. Plaintiff's neck "bothers [him] all the time" with a constant dull pain, which occasionally manifests as a sharp pain, "like a needle sticking in [his neck]," when he turns his neck. When asked what limitations he has because of his neck pain, plaintiff explained:

> I've limited my flying. The vibration from the plane bothers my neck and makes it hurt. The bumps make it hurt. I've limited my motorcycle riding to about two hours this summer because the vibration makes my neck hurt. I don't limit my driving, but it's becoming a—not becoming a problem, it is a problem, to try and turn around and look for traffic or to back up, stuff like that. I don't drive for a long period of time. I have to stop every couple of hours, get out, move around a little bit because my neck hurts.

> I used to like work on my airplane and get underneath it when it was time to inspect it and clean it and stuff like that, and I can't lay on a creeper and raise my head anymore. I have trouble sleeping. I wake up about four, five times a night, because when I move I get a sharp pain in [his neck] and it wakes me up. Working around the house is—I mean, I still have problems with it. I've got to be careful what I do.

> That's all I can think of right now.

Before the accident, plaintiff would fly approximately 50 to 60 hours a year, but he has limited that to about 20 hours a year because of the vibration in the plane, and having to turn his head right and left and looking up and down is difficult. And with respect to his motorcycle riding, plaintiff before the accident would ride anywhere between 2,000 and 4,000 miles. But after the accident, he only had been able to tolerate 200 miles per year, as riding is "miserable." Indeed, in the summer of 2014 plaintiff only rode his motorcycle twice, each for a short period of time. Additionally, plaintiff golfed approximately once a week prior to the accident but now is only able to tolerate golfing once a month due to the pain in his neck. Further, plaintiff stated that even mundane, light activities, such as reading and sleeping, have been negatively affected by his neck pain.

Therefore, after viewing all of the evidence in a light most favorable to plaintiff as the non-moving party, we hold that there is a question of fact whether the third prong of the subsection 3135(5) analysis was satisfied where the impairment had a significant influence on how plaintiff conducted his life. *McCormick*, 487 Mich at 202. Plaintiff suffers from constant pain following the subject motor vehicle accident, and his participation in recreational activities such as flying his plane, motorcycle riding, and golfing has been significantly curtailed because of his pain. Further, his basic activities of living, such as sleeping, driving a car, and reading have been negatively affected as well. As a result, there is a question of fact for a jury to resolve whether "plaintiff has shown that the impairment affected his general ability to lead his normal life because it influenced some of his capacity to live in his normal, pre-incident manner of living." *Id.* at 218. The trial court erred when it determined that these "self-imposed restrictions because of pain" were fatal to plaintiff's claim; indeed, these types of restrictions are now no longer a bar under *McCormick*. We stress that our holding is limited solely to whether there was sufficient evidence to show that plaintiff's injuries affected his general ability to lead his normal

life.  Because they were not part of the instant motion for summary disposition, we offer no opinion on whether there was sufficient evidence to show that the other two requirements ([1] an objectively manifested impairment [2] of an important body function) for establishing a serious impairment of body function were met.

Reversed.  Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Henry William Saad
/s/ Kathleen Jansen
/s/ Michael J. Kelly